Irving F. REED, Jr.

v.

**POOL OFFSHORE COMPANY, et al.**

Civ. A. No. 780776.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Aug. 28, 1981.

B. J. Manuel, Daniel J. McGee, Rozas, Manuel, Fontenot & McGee, Mamou, La., for plaintiff.

Ronald A. Johnson and Richard A. Cozad, Johnson & McAlpine, New Orleans, La., for Pool Co. of Texas.

Arthur I. Robison, Allen, Gooch & Bourgeois, Lafayette, La., Charles C. Gray, Dallas, Tex., for Mobil Oil Co.

William M. Bass, Voorhies & Labbe, Lafayette, La., Edmund E. Woodley, Robert W. Fenet, Woodley, Barnett, Cox, Williams & Fenet, Lake Charles, La., for Crown Oilfield Service.

Don L. Broussard, Lafayette, La., for Travelers Ins. Co.

## OPINION

VERON, District Judge.

This cause of action arose out of an accident which occurred off the coast of Louisiana and in the Gulf of Mexico. Plaintiff alleges causes of action under the Jones Act and the General Maritime Law. This court has subject matter jurisdiction. 28 U.S. C.A. § 1333.

Plaintiff Reed (Reed) instituted this action against Mobil Oil Company (Mobil) and Pool Offshore Company (Pool) for injuries he alleged he received on or about October 4, 1977, while working aboard a barge belonging to Mobil, which was tied up to a fixed platform in the Gulf of Mexico, approximately 100 miles from the Louisiana coast.

Plaintiff was an employee of Crown Oilfield Services, Inc. (Crown).

Mobil entered into a contract with Crown to furnish a crew to perform work of repairing and/or replacing bumper pilings for Vermilion Block 23–A Platform.

Plaintiff alleged that while performing duties for Crown aboard Mobil's barge, he was injured. He claims that he was a borrowed employee of Mobil and therefore has a Jones Act claim. He also contends that Mobil owed him the duty of furnishing him with a seaworthy vessel which it did not do. He contends because of the combined negligence of Mobil and Pool, he also has causes of action based on the general laws of tort, general maritime law, Jones Act and maritime tort.

Mobil filed a third party complaint against Crown and a cross-claim against Pool. The essence of Mobil's complaint against Crown was the contract between the parties which Mobil contends bound Crown to defend, protect, indemnify and save Mobil harmless against any and all claims, etc. The essence of Mobil's cross-claim against Pool is also based on the contract between the parties which Mobil contends bound Pool to defend, protect, indemnify and save Mobil harmless against any and all claims, etc.

Mobil also claimed that should it be found negligent, then it contends that any negligence on its part would be passive whereas Crown and Pool's fault was actual active fault and that as a result thereof, Mobil claims that it is entitled to complete protection and indemnity from Crown and Pool. Mobil further claims contribution from Crown and Pool should it be found at fault in this matter.

Crown filed a cross-complaint against Pool, contending that if there was an accident and injuries to plaintiff, then it was caused by acts of Pool, and as such, Crown, in the event it is held liable in this matter, demand indemnification, contribution, and subrogation.

Pool filed a cross-claim against Crown asserting the same claims against Crown that Crown asserted against it.

Travelers Insurance Company (Travelers) intervened in the suit, alleging that it was the Workmen's Compensation insurer of Crown and has paid compensation benefits and medical expenses to plaintiff and may in the future be required to pay additional amounts. Travelers contends it is entitled to be reimbursed by preference and priority out of the proceeds of any judgment or judgments which may be rendered in these proceedings.

The claims of plaintiff against Mobil and Pool were tried to a jury. The parties agreed that the court would decide all third party claims.

During the course of the trial, the court took from the jury the issue of the claim by plaintiff that he was a borrowed employee of Mobil and ruled that he was not a borrowed employee and thus did not have a Jones Act claim against Mobil. (See transcript for findings). The court did hold however that plaintiff was a seaman and entitled to a seaworthy vessel and so instructed the jury.

Counsel for defendants strenuously disagree with the court's ruling declaring the plaintiff a seaman. Therefore, the court feels that it should at this time set forth the facts and the law.

Mobil contracted with Crown for Crown to furnish a crew to repair and/or replace bumper pilings for Vermilion Block 23–A Platform. Mobil furnished the barge and tug which was equipped to do this work. Plaintiff was one of the crew members who was instructed by his employer to board the tug and barge at Morgan City, Louisiana. Plaintiff boarded the vessel and it proceeded to the Vermilion Block 23–A Platform.

When the barge and tug arrived at the platform, the crew commenced to perform the duties which they were hired to do. They not only performed all of their duties aboard the barge they also ate and slept on the tug. The plaintiff was injured on the sixth day of the voyage when he slipped and fell on the barge caused by a substance that came from the fixed platform.

A plaintiff may qualify as a seaman (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips. *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir. 1959).

No one questions the fact that the barge and tug were vessels within the meaning of that term. Since it is clear that Reed was working on the vessel, our next inquiry is whether he was permanently assigned to it or did a substantial part of his work on it.

In *Roberts v. Williams-McWilliams*, 648 F.2d 255 (5th Cir. 1981), the court stated:

... Since we articulated our standard that the relationship between the individual and a particular vessel or several specific vessels must be substantial in point of time and work, not merely sporadic, see, i. e., *Braniff v. Jackson Ave-Gretna Ferry, Inc.*, 280 F.2d 523, 528 (5th Cir. 1960), we have recognized the word permanent has never been assigned a literal interpretation under the Jones Act and should not be given a wooden application, but rather, is to be used as an analytical starting point instead of a self-executing

formula. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 337 (5th Cir. 1977) (citing *Brown v. ITT Rayonier, Inc.*, 497 F.2d 234, 237 (5th Cir. 1974)). 'The key is that there must be a relationship between the claimant and a specific vessel or identifiable group of vessels.' *Guidry v. Continental Oil Co.*, 640 F.2d 523, 529 (5th Cir. 1981).

The court concluded that there was a relationship between Reed and the barge and tug; that relationship started when he was assigned to the vessel and remained until the time of the accident.

The jury found that Pool was 20% negligent, Mobil 60% negligent, third parties 15% negligent and Reed 5% negligent. It is clear from the evidence and the jury's verdict that Pool's negligence was based on fixed platform negligence and thus Louisiana law would be applicable. *Rodrigue v. Aetna*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). It is also clear that Mobil's negligence is based on general maritime law because the only evidence of Mobil's negligence was evidence of its failure to do that which it should have done on its barge. *In Re Dearborn Marine Service, Inc.*, 499 F.2d 263 (5th Cir. 1974).

The third party negligence had to be negligence of Crown's foreman for his actions aboard the barge. There was no evidence of any other third party's negligence.

There are numerous questions to be answered in order to determine the liability of the various parties.

Before getting into the questions of the different defendants' liability, there appears no dispute between all the parties that the judgment of $226,774.78 [1] is to be apportioned among the various parties.

At the time of this accident, under Louisiana law, contributory negligence was a bar to recovery in a negligence action. *Evans v. Chevron Oil Co.*, 438 F.Supp. 1097,

---

1. The verdict rendered by the jury was in the sum of $200,000.00. This sum was increased by $26,774.78, being the medical expenses incurred by plaintiff and paid by Travelers Insurance Co. The parties stipulated that any judgment rendered by the jury was to be increased by this sum.

affirmed *Dresser Offshore v. Chevron Oil Co.,* 616 F.2d 565 (5th Cir. 1980). Pool argues that Reed's contributory negligence bars his right of recovery from Pool under Louisiana law as applied through the *Rodrigue* case.

The court disagrees with Pool. In the case of *In re Dearborn Marine Service, Inc., supra,* the claim of Armstrong is on all fours with the facts of the instant case. Armstrong, the master of the vessel, was found to be 25% contributorily negligent in mooring the "carryback" (*Dearborn* was the owner of the carryback) with a 75 foot rope to the platform's leeward side. The defendants were Dearborn, the owner of the carryback, C & K owner of the platform, DEI, operator of the platform, and Chapman, labor supplier.

The District Court found C & K, Chapman, DEI and Dearborn liable for the death of Armstrong. There is no question that the holding of *In re Dearborn* clearly calls for the fixed platform defendants to pay the Armstrong heirs for their negligence. Such being the case, clearly, Pool must pay Reed for its negligence in bringing about his injuries.

There is no question concerning Mobil's obligation to Reed for its negligence. They along with Pool must bear the responsibility of Reed's damages.

■ Since the jury found Mobil and Pool negligent, the court must determine the apportionment of the $215,436.04 (judgment of $226,774.78 less Reed's 5% contributory negligence of $11,338.74) between Pool and Mobil.

In the *In re Dearborn* case, *supra,* the question of each defendant's percentage of negligence was not set out, so that case cannot be used as a guide in determining how the award is to be apportioned.

In the case of *Edmonds v. Compagnie Generale Transatl.,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979) the Supreme Court stated the general rule that an injured party may "sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the accident." 443 U.S., at 260, 99 S.Ct. at 2756.

The court holds that Pool and Mobil are jointly liable to Reed in the sum of $215,-436.04.

Next the court must deal with the questions of contribution between Pool and Mobil and the third party and cross-claims of Pool, Mobil and Crown. All of these matters were tried to the court.

■ At the conclusion of all the evidence, Crown moved for a directed verdict on the grounds that there was no negligence on the part of Crown and the court granted the motion. It is clear that the court's findings are obviously inconsistent with the jury's findings and the court ruling must be reversed as the jury's determination must prevail. *See Culver v. Slater Boat Co.,* 644 F.2d 460 (5th Cir. 1981). Therefore, the court's findings of no negligence on the part of Crown is reversed and the motion for directed verdict is denied.

■ Mobil, having been found actively negligent by the jury, is not entitled to indemnity from Crown and Pool on the basis of passive-active negligence. By the same token, the cross-claims of Crown and Pool against each other for indemnity on the basis of passive-active negligence is also denied. *Law v. Sea Drilling Corporation,* 510 F.2d 242 (5th Cir. 1975); *In Re Dearborn, supra.*

We next move to the question of contribution between the parties. In this context, the negligence of the parties was found by the jury to be:

| | |
|---|---|
| Reed | 5% |
| Mobil | 60% |
| Pool | 20% |
| Crown | 15% |
| | 100% |

■ The amount of the award is $226,-774.78. However, this sum must be reduced by plaintiff's 5% negligence making a net award to plaintiff of $215,436.04. How should this sum be apportioned among the parties? The court concludes that "when

two or more parties have contributed by their fault to cause injury to another, the liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault." *Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246 (5th Cir. 1979). Therefore, the liability of the parties are as follows:

| Mobil | 60% of $226,774.78 | = | $136,064.87 |
| Pool | 20% of 226,774.78 | = | 45,354.95 |
| Crown | 15% of 226,774.78 | = | 34,016.22 |
| Total | 95% | | $215,436.04 |

▇ Crown must indemnify Mobil and Pool the $34,016.22 of the $215,436.04 which Mobil and Pool are jointly liable to Reed.

▇ This now brings us to the question of whether Mobil is entitled to contractual indemnity from Pool and Crown.

Pool argues that Mobil is not entitled to indemnity because the contract between the parties indicated that Pool would indemnify Mobil for the consequences of Mobil's negligence arising out of the drilling operations. Pool further argues that Crown had a similar contract with Crown whereby Crown indicated it would indemnify Mobil for the consequences of Mobil's negligence in connection with Crown's operations. Pool then contends that Crown should indemnify Mobil in this instance because the work in progress was a Crown-Mobil operation and Mobil's negligence took place on the barge. Thus Pool insists that nowhere in the Pool-Mobil contract can there be evidenced any intent on the part of Pool to indemnify Mobil for the consequences of Mobil's negligence in a separate operation taking place on a barge where Mobil has also contracted with Crown for that obligation. Conversely, it argues that Crown would not intend, in entering into the Crown-Mobil contract, to indemnify Mobil for the consequences of Mobil's negligence arising out of the drilling operation on the platform. Pool concludes its argument by stating that it is important to look to the locale of Mobil's negligence and consider whether it arises out of the platform-based drilling operation or the barge-based boat bumper repairs to decide which contract is applicable.

The court agrees that it should look to the locale of the negligence of the parties to determine if the contracts were intended to cover this situation. The evidence in the case was clear that Pool's negligence on the platform was the initial act which contributed to Mr. Reed's injuries. If Pool had not been negligent in allowing the calcium chloride to spill onto the barge, there would not have been an accident. Mobil and Crown's negligence were intervening acts which contributed to Reed's injuries. It is true that the contract between Mobil and Pool provided for indemnity by Pool to Mobil for the consequences of Mobil's negligence arising out of the drilling operation. However, the court finds that the initial act of Pool was a consequence of the drilling operation of Pool and is one contemplated by the contract.

We also look to the contracts to determine if Mobil is entitled to contractural indemnity from Pool and Crown.

The pertinent parts of the contracts are as follows:

Article 15.4 of the contract between Mobil and Pool provides as follows:

Contractor shall protect, indemnify and save Mobil harmless against any and all claims demands and causes of action of every kind and character arising in favor of any person, including both Mobil's and Contractor's employees, on account of personal injuries or death, or damage to property occurring, growing out of, incident to, or resulting directly or indirectly from, the work to be performed by Contractor hereunder, whether such loss, damage, injury or liability arises from or is contributed to by the negligence of Mobil or its employees, and whether due to imperfection of any material furnished by Mobil, or the premises themselves or any equipment thereon, whether latent or patent, or for any other cause whatsoever; and for damages for infringement of any patent as more particularly set forth in Paragraph 23 hereof.

Article 3 of the contract between Mobil and Crown provides as follows:

Contractor shall defend, protect, indemnify and save company harmless against any and all claims, demands and causes of action of every kind and character arising in favor of any person, including both Company's and Contractor's employees, on account of personal injuries or death, or damage to property occurring, growing out of, incident to, or resulting directly or indirectly from, the work to be performed by Contractor hereunder, (including any condition of the premises or from separate operations being conducted thereon by Company) whether such loss, damage, injury or liability arises from or is contributed to by the negligence in any form of Company or its employees, or whether due to imperfection of any material furnished by Company, or the premises themselves or any equipment thereon, whether latent or patent, or for any other cause whatsoever . . . .

As can be seen from the pertinent parts of the contracts, while not in the exact same wording, provide the same indemnity provisions.

We find that the indemnity agreements quoted above evidences a clear intent to indemnify Mobil against its own negligence, sole or concurrent. In determining that this was the intent of the parties we are particularly persuaded by those parts of the indemnity clause of each contract that provides that Mobil is to be indemnified whether the loss "arises from or is contributed to by the negligence of the Company . . ." The clause certainly covers Mobil's concurrent negligence, i. e., where both Mobil and the contractor are negligent. The evidence in this case clearly established that there was concurrent negligence on the part of Pool and Mobil.

The indemnity agreement between Crown and Mobil is the same, although the wording is slightly different. The agreement provides for Mobil to be indemnified where there is concurrent negligence between Crown and Mobil. As in case of Pool, so to here, Crown was concurrently negligent with Mobil and Mobil is to be indemnified.

Having determined that Mobil is entitled to be indemnified by Pool and Crown, the court is faced with the question of how to apportion the indemnification between Pool and Crown. Pool was 20% negligent and Crown was 15% negligent. As held in the *Leger* case, *supra*, the court believes that the indemnity should be apportioned in relationship to the respective percentage of negligence of each party to the total negligence between them. A mathematical formula probably would result in the most equitable solution to the problem. Hence, we submit the following:

| | | | |
|---|---|---|---|
| Pool | 20/35 × $136,064.87 | = | $ 77,751.36 |
| Crown | 15/35 × 136,064.87 | = | 58,313.51 |
| | | | $136,064.87 |

Travelers Insurance Company intervened in the case, seeking to be reimbursed for compensation and medical expenses paid to the plaintiff as a result of a policy of Workmen's Compensation Insurance it issued to plaintiff's employer, Crown. The court concludes that Travelers is entitled to recover the medical expenses of $26,774.78, plus all weekly compensation paid Reed by preference and priority from the judgment rendered in this case.

Plaintiff Reed is entitled to recover from Mobil and Pool, jointly, the sum of $215,436.04. Mobil is entitled to indemnification from Pool and Crown. In the event plaintiff calls on Mobil for full recovery of the sum of $215,436.04, Mobil is entitled to be reimbursed by Pool in the sum of $123,106.31 and by Crown in the sum of $92,329.73. Travelers Insurance Company is entitled to be reimbursed by preference and priority out of the proceeds of the judgment in favor of plaintiff by the sum of $26,774.78 plus all weekly compensation paid.